## Ridley Park Boro. School Dist., to use, v. Seaboard Surety Co.

*Ledward & Hinkson,* for plaintiff; *Robert B. Greer,* for defendant.

MacDADE, J., July 19, 1930.—On or about June 13, 1929, the School District of the Borough of Ridley Park entered into a written contract with the Jones-Redditt Company, a corporation, whereby the latter undertook to erect and complete a school for the former, called the Barker Street School, in said borough. In accordance with the provisions of the Acts of March 28, 1929, P. L. 106, May 6, 1925, P. L. 546, and May 10, 1917, P. L. 158, the school district aforesaid accepted the penal bond of the defendant in the amount of $15,456, which the Jones-Redditt Company gave to it. Subsequently, the Jones-Redditt Company completed the building for the school district as contemplated by the contract, except that it failed to pay certain claims for labor and materials, including the claim of the use-plaintiff in the sum of $383.75, together with interest. The use-plaintiff was a sub-contractor which had contracted to provide all the material and perform all the work for the sheet metal work, &c., which work it performed and which materials it furnished. It is conceded that said sum is now due and owing by the general contractor or principal in said bond, the Jones-Redditt Company, and for it the latter gave to the use-plaintiff and sub-contractor, when the latter completed its work on Oct. 14, 1929, a check *eo die* for the said amount. There were no

funds in the bank to meet the check, and, consequently, M. D. Gould, Inc., the use-plaintiff herein, did not receive its money. The defendant was notified, as required by the bond, and, after requesting this use-plaintiff to wait a while until it had all the figures, it became apparent that this defendant did not intend to pay; hence this suit.

The defendant admits the above, but raises the defense that it became surety; that the use-plaintiff has not been paid; that the use-plaintiff performed its contract and took all proper and necessary steps to bring suit upon the bond, but that it cannot collect its money because when it received the worthless check it had signed a release of liens to the school district for the building and premises, thus waiving the right to file a lien against the school building, which admittedly is a "public building." A copy of this release of liens is attached to the amended affidavit of defense filed in this cause. It is the ordinary release of liens and releases the right to file a lien against the premises, and that alone. It releases no party, either contractor or surety.

This is really an action in *assumpsit* on an *additional* bond given by a contractor and a surety to a school district, under the provisions of the 1st section of the Act of May 10, 1917, P. L. 158, as amended by the Act of May 6, 1925, P. L. 546, and the Act of March 28, 1929, P. L. 106, which section is, in substance, as follows:

"Be it enacted, &c., That it shall be the duty of all counties, cities, boroughs, towns, townships, school districts and poor districts in the improvement of lands, or in the erection, alteration, addition or repair of roads, bridges, edifices and public buildings of any kind, in said districts, to require of the contractor or contractors employed in or about said improvements an additional bond, with sufficient surety or sureties, providing for the payment of all labor and material entering into the said improvements, and all machinery used on such improvements."

The defendant gave the additional bond on June 13, 1929, as required by law, for the general contractor to the school district, conditioned that the said Jones-Redditt Company, a corporation, and the general contractor aforesaid ". . . shall and will promptly pay or cause to be paid to any and all persons any and all sum or sums of money which may be due for labor or materials, or both, furnished, done, performed or supplied upon, in or about the said additions or alterations or work . . . and will and shall comply with all the provisions of the School Law of the State of Pennsylvania. . . ."

The use-plaintiff entered a motion on June 20, 1930, and reasons therefor, for judgment for want of a sufficient affidavit of defense, as follows:

"1. The allegation of the defendant that the use-plaintiff gave Jones-Redditt Company an alleged receipt is immaterial, because the alleged receipt, as shown on its face, is not a receipt of any kind, but merely a release of liens to the School District of Ridley Park, Delaware County, Pennsylvania, waiving the right to file a lien upon a school building when there was no legal right of any kind to file a lien against the same.

"2. Because the release of liens is not payment, does not admit payment and releases neither Jones-Redditt Company nor the Seaboard Surety Company, its surety, from the obligation to pay the indebtedness due the use-plaintiff.

"3. The affidavit of defense and amended affidavit of defense show upon their faces that the check which Jones-Redditt Company gave to the plaintiff was not cashed through no fault of the use-plaintiff and that there were no funds in the bank to meet the same.

"4. Because the obligation of the defendant was that it would promptly pay or cause to be paid any and all persons any sums which might be due for

labor, materials, or both, and defendant in the affidavit of defense and amended affidavit of defense admits that the use-plaintiff was not paid for labor and materials which it had furnished for the operation covered by the bond of the defendant.

"5. Because the giving of the check by Jones-Reddett Company when there were no funds to meet the same was not payment in any sense.

"6. Because the affidavit of defense does not aver how or why it was prejudiced by the use-plaintiff in signing a release of liens, the same not acknowledging any payment and the use-plaintiff having no right to file a lien against a school building.

"7. Because the release of liens entered into the matter in no way whatever, because, under the law, a lien could not be filed against a public school building.

"8. Because the defendant does not aver any facts by which the use-plaintiff is estopped from setting up a claim upon the bond given by the defendant. The purpose of the bond was to guarantee payment to persons who furnished labor and material as the use-plaintiff did, and nothing is alleged either by way of payment or release of the Jones-Redditt Company or the defendant.

"9. Because the defendant admits that it has not fulfilled its obligation of the said bond and has not paid the use-plaintiff for labor and materials upon the operation for which the bond was given.

"10. Because the defendant admits the use-plaintiff has not been paid for labor and materials going into the operation for which the bond was given, and admits it was through no fault of the use-plaintiff that it has not received payment for the same."

Therefore, we have a case where the use-plaintiff was not paid by the contractor for labor performed and material furnished for the erection and completion of the "Barker Street School."

The bond given by the contractor and surety was the *additional* bond required by the Act of March 28, 1929, *supra*, and the school authorities complied with the requirements of that act.

We hold that, inasmuch as the school district has its separate bond for completion, &c., the use-plaintiff, under the terms of the additional bond, is a party thereto, and that he is such a party as is entitled to recover thereunder such sum as is due and payable for work performed and materials furnished as a sub-contractor in and about the erection and completion of said school (public) building for the School District of Ridley Park: School District of Reading, Pa., et al. *v.* New Amsterdam Casualty Co., 98 Pa. Superior Ct. 221. This case holds that the additional bond required under the Act of May 6, 1925, P. L. 546, amending the Act of May 10, 1917, P. L. 158, is to assure the payment of the materialmen and laborers, as they are not protected in a bond given by the contractor for the faithful discharge of the covenants of the contract.

Subsequently, the Act of March 28, 1929, was passed amending these acts to include additional subject-matters.

This ruling is affirmed in Eddystone Borough School District et al. *v.* Lewis et al., 98 Pa. Superior Ct. 227. See, also, for pertinent cases, Robertson Co. *v.* Globe Indemnity Co., 77 Pa. Superior Ct. 422; Com., to use of Fields, *v.* National Surety Co., 253 Pa. 5; Greene County *v.* Southern Surety Co., 292 Pa. 304.

This use-plaintiff dealt directly as a sub-contractor with the general contractor, and as such is entitled to the protection of the act, for its provisions

cover those who perform the work or furnish materials under the contract with the general contractor: Eddystone, &c., *v.* Lewis, *supra.*

The bond which we are considering was obviously given to carry out the provisions of the act above referred to. In it are incorporated the same provisions as are contained in the 2nd section of the act, that persons furnishing labor or materials not paid for may bring suit in the name of the school district to their use. The bond was an additional bond, an entirely separate and independent obligation, solely intended for the protection of those furnishing labor or materials to the school building, and in this the case is distinguished from School District of Reading, Pa., et al. *v.* New Amsterdam Casualty Co., *supra.* The materials for which payment is sought actually entered into the construction. This is alleged in the plaintiff's statement and not denied by the defendant. The courts have insisted upon a literal application of the act, and have held that a mere engagement in a bond on the part of the general contractor and his surety to pay materialmen did not make the latter parties to the bond or give them a right to sue in their own name or as use-plaintiffs: Erie, to use, *v.* Diefendorf, 278 Pa. 31; City of Lancaster, to use, *v.* Frescoln and American Surety Co., 192 Pa. 452.

There is, however, no doubt that "when an additional bond is given in pursuance" of the above act, its provisions cover not only those who perform work or furnish materials under contract with the general contractor, but also those who deal with sub-contractors. This is settled definitely by Merion Township School District *v.* Evans, 295 Pa. 280. As was said in Eddystone, &c., *v.* Lewis, *supra:* "The bond being given for the sole purpose of protecting all the labor and material men, it will not be limited in its application. . . . *The board, at its discretion, might insert in the contract such provisions as it saw fit, but the condition to be inserted in the bond, protecting those furnishing work and materials, is fixed by the act of assembly and the act is mandatory."*

Certainly it is a sufficient answer to this alleged defense to state:

Firstly. No lien could ever have been filed against the school building, and the release of liens meant absolutely nothing.

Secondly. A release of liens waiving the right to file a lien against certain premises (in this case there being no such right) would not relieve any individual. It merely releases the premises.

Thirdly. The release of liens, even if it had any bearing at all, would not be good, if procured by the giving of a worthless check.

It will be noted that defendant in its first affidavit of defense alleged the use-plaintiff had given Jones-Redditt Company, the contractor, "a receipt in full showing payment of all its claims." This is not correct, and the fabric of this defense becomes disintegrated when it is shown that such is not the fact and this defendant defends solely upon that hypothesis. No receipt was given but a release. The authorities cited by defendant upon the matter of the giving of receipts under certain circumstances have no bearing here and the facts are dissimilar. Giving a release of liens affecting the premises only and the building was a vain thing, for no mechanic's lien can be filed against a public building, and certainly defendant's rights were not disturbed or prejudiced. When executing the release—a sham—the general contractor gives his check in due course (which in this case was only collateral for the debt and not accepted as payment) to the use-plaintiff in payment of labor and material due on the job, and then the check is not paid upon presentation at the bank where payable. Now, the surety expects to escape liability for this reason. This would mean for us to condone a palpable fraud by finding

for this defendant, whose duty is fixed by the act of assembly protecting those furnishing work and materials, and the act is mandatory. The defendant cannot thus escape its plain duty to pay, and it must in the case at bar. The amended affidavit of defense shows it was a mere release of liens.

The defendant further alleges that, because the Ridley Park School District paid Jones-Redditt Company some money which was owing to Jones-Redditt Company, the use-plaintiff cannot maintain its action, although it was not a party to the payment and knew nothing of it. Apparently the contention is that when Jones-Redditt Company produced to the school district a release of liens, which had no legal effect at all, and which was signed by the use-plaintiff because of a "bad check" being given to it, the school district paid Jones-Redditt Company some money it had in its hands. How is either the use-plaintiff or the defendant involved or interested in this? The use-plaintiff did not tell the school district to pay Jones-Redditt Company and it knew nothing at all about the money in the hands of the school district. Then, again, how is defendant interested in that, so far as the use-plaintiff is concerned? Its bond was to "promptly pay" the use-plaintiff. There was nothing in the bond about any moneys in the hands of the school district being part of the bond.

It is a well settled rule that a surety upon a bond is not relieved because the sub-contractor takes a negotiable instrument from the contractor, the principal in the bond. The presumption is that the negotiable instrument is merely collateral to the main debt: Hummelstown Brownstone Co. *v.* Knerr, 25 Pa. Superior Ct. 465; Philadelphia *v.* Howell, 19 Pa. Superior Ct. 76.

Upon the general proposition that the accepting of a negotiable instrument does not affect the right of the party by whom it is received to pursue any other remedy he has, see American Car & Foundry Co. *v.* Water Co., 221 Pa. 529; Shaw & Leigh *v.* Church, 39 Pa. 226; Odd Fellows' Hall *v.* Masser, 24 Pa. 507.

This bond was given under the provisions of the Act approved March 28, 1929, P. L. 106, *supra,* and it was the clear purpose of that act and the acts it amends to see that all bills for all labor and materials going into the erection of a school (public) building should be paid. One of the reasons for that legislation was to insure to labor and materialmen prompt payment for their services and materials, and thus secure favorable bids for a public work. If the argument of defendant can prevail, then all of the work of the Legislature means absolutely nothing, and labor and materialmen are in the same position as before the original legislation along that line which was enacted in 1917.

Therefore, for the reasons aforesaid, the use-plaintiff is entitled to judgment and, in natural sequence, we make the following

## Order.

And now, July 19, 1930, the above matter coming on to be heard by the court *in banc,* upon a motion for judgment in favor of the plaintiff for want of a sufficient affidavit of defense, together with oral arguments and briefs, after due consideration, the court doth order and decree that judgment be and is hereby entered in favor of the plaintiff and against the defendant for want of a sufficient affidavit of defense, and the prothonotary is hereby directed to assess the plaintiff's damages upon presentation of the usual præcipe therefor.

From William R. Toal, Media, Pa.